**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **RANDY JOE WALLS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-18-464-STE** |
| | ) | |
| **NANCY A. BERRYHILL, Acting** | ) | |
| **Commissioner of the Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the

final decision of the Commissioner of the Social Security Administration denying Plaintiff's

application for benefits under the Social Security Act. The Commissioner has answered

and filed a transcript of the administrative record (hereinafter TR. _____). The parties have

consented to jurisdiction over this matter by a United States magistrate judge pursuant

to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on

the Court's review of the record and the issues presented, the Court **AFFIRMS** the

Commissioner's decision.

## I.   PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's

application for benefits. Following two administrative hearings, an Administrative Law

Judge (ALJ) issued an unfavorable decision. (TR. 32-47). The Appeals Council denied

Plaintiff's request for review. (TR. 4-6). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.    THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 10, 2014, the application date. (TR. 34). At step two, the ALJ determined that Mr. Walls had the following severe impairments: asthma; chronic obstructive pulmonary disease (COPD); and hypertension. (TR. 34). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 37).

At step four, the ALJ concluded that Mr. Walls retained the residual functional capacity (RFC) to: [P]erform "medium work" as defined in 20 CFR 416.967(c), except the claimant must avoid even moderate exposure to dust, fumes, gases, odors, and poor ventilation. (TR. 38) (footnote omitted). With this RFC, the ALJ concluded that Mr. Walls was unable to perform any past relevant work. (TR. 46). As a result, the ALJ proceeded to step five and presented several limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 75-76). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles. (TR. 76). The ALJ adopted the testimony of the VE and concluded that Mr. Walls was not disabled based on his ability to perform the identified jobs. (TR. 47).

## III. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## IV. ISSUES PRESENTED

On appeal, Mr. Walls alleges errors in: (1) the RFC and (2) the ALJ's evaluation of Plaintiff's testimony.

## V. NO ERROR IN THE RFC DETERMINATION

As stated, the ALJ determined that Plaintiff had the RFC to "[P]erform 'medium work' as defined in 20 CFR 416.967(c), except the claimant must avoid even moderate exposure to dust, fumes, gases, odors, and poor ventilation." (TR. 38) (footnote omitted). Mr. Walls argues: (1) the RFC failed to accommodate his shortness of breath as opined by two examining physicians; (2) the RFC failed to accommodate his depression as diagnosed by an examining physician; and (3) the ALJ failed to recontact an examining psychologist for clarification of an opinion. (ECF No. 19:8-11). As a result of these cumulative errors, Mr. Walls contends that the RFC lacks substantial evidence. The Court disagrees.

### A. Shortness of Breath

On February 21, 2014 State Agency physician Jim Burke examined Mr. Walls and noted that throughout the exam, Plaintiff suffered from shortness of breath, with an "expiratory phase [ ] much longer than inspiratory phase" and "an expiratory induced cough and wheeze [were] noted." (TR. 394). On March 21, 2014, state examining psychologist Dr. Ray Hand noted that Mr. Walls "appear[ed] to have difficulty with shortness of breath and breath sounds were notable throughout the interview." (TR. 407).

Plaintiff argues that the comments from Drs. Burke and Hand should have resulted in additional limitations in the RFC. (ECF No. 19:9-10). According to Mr. Walls:

> It would seem elementary that a person who exhibited great difficulty breathing while simply talking and being examined by a physician, would have great difficulty lifting 25 pounds frequently and up to 50 pounds during the workday. Further, if he were able to lift such weight at all, it would certainly be necessary to implement unscheduled breaks into Plaintiff's RFC, given he exhibited such breathing problems while sitting.

(ECF No. 19:9). The problem, however, with Mr. Walls' argument is that it is grounded in speculation, without evidentiary support.

Mr. Walls states that additional limitations are warranted based on "the medical evidence and [his] testimony." (ECF No. 19:11). But Plaintiff's testimony related to his shortness of breath was that it was caused by working around dust as a woodworker and carpenter, smoking cigarettes, and being exposed to secondhand smoke. (TR. 70-71, 92-94). Mr. Walls testified that he quit smoking, and he walks away to avoid secondhand smoke. (TR. 71, 93). And the ALJ accommodated Plaintiff's shortness of breath related to dust exposure by limiting him to avoiding "even moderate exposure to dust, fumes,

gases, odors, and poor ventilation." (TR. 38). But no medical professional has opined that Plaintiff's shortness of breath requires additional limitations or unscheduled breaks throughout the day. Plaintiff's contention that the conclusion is "elementary" is simply insufficient. *See Jimison ex rel. Sims v. Colvin,* 513 F. App'x 789, 792 (10th Cir. 2013) (requiring "record support" for a claimed lifting restriction); *Scott v. Astrue*, No. CIV-07-390-L, 2008 WL 2704471, at *3 (W.D. Okla. July 7, 2008) (noting that an assumption regarding a plaintiff's ability to perform a certain activity "is speculation, not evidence," and would not provide support for the plaintiff's ability to perform a specific job).

### B.    Depression

Next, Mr. Walls argues that "the ALJ failed to incorporate any limitation with respect to Plaintiff's 'major depression,' despite the fact that Social Security's own doctor diagnosed Plaintiff with the same after performing an examination." (ECF No. 19:10). Again, Plaintiff states that additional limitations are warranted based on "the medical evidence and [his] testimony." (ECF No. 19:11). The Court rejects this argument. Although Dr. Hand diagnosed Plaintiff with major depression,[1] "[t]he mere diagnosis of a condition does not establish its severity or any resulting work limitations." *Paulsen v. Colvin*, 665 F. App'x 660, 666 (10th Cir. 2016). Mr. Walls also cites Dr. Hand's remarks noting that Plaintiff has "difficulty managing his emotions at times" and has "lost interest in" certain activities,[2] but Dr. Hand did not thereafter allocate specific work-related limitations owing to Mr. Walls' mental health. And Plaintiff's only testimony regarding his depression was that drinking alcohol helped. (TR. 72). Dr. Hand did not assess any

---

[1]  (TR. 408).
[2]  (ECF No. 22:3).

particular limitations owing to the Plaintiff's depression and Plaintiff did not testify that his depression had limited in him in any particular way. Accordingly, the Court finds no merit with this allegation of error.

### C. Duty to Re-Contact

After examining Plaintiff, Dr. Hand stated that Mr. Walls' Global Assessment of Functioning (GAF) was 50, in the serious symptom range. (TR. 408). The ALJ considered Dr. Hand's opinion, but ultimately afforded it "minimal weight," in part, noting that "not all of [the] nine subcategories [upon which a GAF rating is based] … are properly part of the disability analysis under the Social Security Act" and "Dr. Hand did not express an Axis IV opinion to so indicate which subcategories upon which he was basing his GAF rating." (TR. 41).

According to Mr. Walls, "if the Social Security's own doctor failed to provide the entire basis for his opinion, it was error for the ALJ to simply reject the same. Indeed, such failure triggered the ALJ's duty to seek further development of the record before rejecting the opinion." (ECF No. 19:10) (citation omitted). The Court disagrees.

In support of his argument regarding the ALJ's duty to recontact, Mr. Walls cites *Robinson v. Barnhart*, 366 F.3d 1078 (10th Cir. 2004). In *Robinson*, the relevant statute was 20 C.F.R. § 416.912(e)(1). *See Robinson*, 366 F.3d at 1084. That statute *required* an ALJ to "seek additional evidence or clarification from [a] medical source when the report from [the] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.912(e)(1) (2004). However, under the current regulations, effective

March 26, 2012,[3] the duty to recontact a physician is discretionary, rather than mandatory. *See* 20 C.F.R. § 416.920b(c) (if the evidence is insufficient to determine disability, an ALJ "*may* recontact [a] treating physician, psychologist, or other medical source.") (emphasis added). The SSA considers evidence "insufficient" when "it does not contain all the information we need to make our determination or decision." 20 C.F.R. § 416.920b.

Here, the ALJ obviously deemed the evidence sufficient to render a decision. The ALJ devoted nearly two pages of the administrative decision discussing the evidentiary significance of a GAF opinion and ultimately stated that he "did not utilize [the GAF rating rendered by Dr. Hand] as the sole basis of decision making, but, rather, carefully considered such GAF rating with the rest of the evidence of record and, for all of the reasons discussed herein, has afforded such minimal weight." (TR. 42). Because the regulations are discretionary, rather than mandatory, and the ALJ did not deem the evidence insufficient to render an opinion, the Court finds no error in the ALJ failing to recontact Dr. Hand.

## VI. NO ERROR IN THE ALJ'S EVALUATION OF PLAINTIFF'S TESTIMONY

Mr. Walls argues that the ALJ "failed to properly perform the required analysis [under Social Security Ruling 16-3p] because he simply misrepresented much of Plaintiff's testimony and prior statements to come to the conclusion at which he wanted to arrive." (ECF No. 19:11-12). Specifically, Mr. Walls argues that the ALJ erroneously misrepresented Plaintiff's testimony regarding his drinking and smoking as inconsistent

---

[3] The current regulations were valid and controlling at the time of the administrative decision—April 29, 2016. *See* TR. 47.

March 26, 2012,[3] the duty to recontact a physician is discretionary, rather than mandatory. *See* 20 C.F.R. § 416.920b(c) (if the evidence is insufficient to determine disability, an ALJ "*may* recontact [a] treating physician, psychologist, or other medical source.") (emphasis added). The SSA considers evidence "insufficient" when "it does not contain all the information we need to make our determination or decision." 20 C.F.R. § 416.920b.

Here, the ALJ obviously deemed the evidence sufficient to render a decision. The ALJ devoted nearly two pages of the administrative decision discussing the evidentiary significance of a GAF opinion and ultimately stated that he "did not utilize [the GAF rating rendered by Dr. Hand] as the sole basis of decision making, but, rather, carefully considered such GAF rating with the rest of the evidence of record and, for all of the reasons discussed herein, has afforded such minimal weight." (TR. 42). Because the regulations are discretionary, rather than mandatory, and the ALJ did not deem the evidence insufficient to render an opinion, the Court finds no error in the ALJ failing to recontact Dr. Hand.

## VI. NO ERROR IN THE ALJ'S EVALUATION OF PLAINTIFF'S TESTIMONY

Mr. Walls argues that the ALJ "failed to properly perform the required analysis [under Social Security Ruling 16-3p] because he simply misrepresented much of Plaintiff's testimony and prior statements to come to the conclusion at which he wanted to arrive." (ECF No. 19:11-12). Specifically, Mr. Walls argues that the ALJ erroneously misrepresented Plaintiff's testimony regarding his drinking and smoking as inconsistent

---

[3] The current regulations were valid and controlling at the time of the administrative decision—April 29, 2016. *See* TR. 47.

with previous statements he had made to two examining doctors. (ECF No. 19:11-14). The Court finds no reversible error in the ALJ's evaluation of Plaintiff's testimony.

### A.     The ALJ's Duty to Evaluate Plaintiff's Subjective Symptoms

Social Security Ruling (SSR) 16-3p provides the framework for an ALJ to consider a claimant's symptoms, including pain. SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). In part, SSR 16-3p directs the ALJ to determine the consistency of the individual's statements as compared to other evidence in the record. *Id.*, at *4-10. In evaluating a claimant's subjective statements, the ALJ must "provide specific reasons for the weight given to the [claimant's] symptoms, [which are] consistent with and supported by the evidence, and [ ] clearly articulated" for purposes of any subsequent review. *Id.*, at *9.

### B.     The ALJ Did Not Err in Analyzing the Consistency of Plaintiff's Testimony with Other Evidence of Record

During Plaintiff's February 21, 2014 examination from Dr. Burke, the physician noted that Mr. Walls stated that "he does not currently drink due to having no money" and that "[h]e smokes 1-2 packs of cigarettes per day x 40 years." (TR. 393). And during the March 25, 2014 examination with Dr. Burke, the psychologist reported that Plaintiff stated that "he does not drink alcohol." (TR. 406).

At the June 23, 2015 administrative hearing, Plaintiff stated that since January 1, 2014, he *had* consumed alcohol and that in fact, the previous day, he had drunk one-half pint of 100-proof vodka. (TR. 61). Mr. Walls stated that he did not drink every day, just only if he "[had] it to drink," and had done so two-three times in the previous week. (TR. 61). Also at that hearing, the ALJ asked Mr. Walls if he had smoked cigarettes since January 1, 2014, to which he replied "I quit" . . . "About two years ago." (TR. 61-62).

On December 1, 2015, a supplemental hearing was held with a different ALJ presiding. *See* TR. 82-102. At that hearing, Plaintiff testified that he had quit smoking in approximately June or July of 2014 and since then he had not had "even one drag." (TR. 99). Also, at that hearing, Plaintiff testified that he was drinking approximately "a half a pint [of alcohol] a day." (TR. 100).

In the decision, the ALJ stated:

> Furthermore, the claimant's hearing testimony concerning his alcohol and tobacco usage is markedly different from the information he gave consultative providers. For example, the claimant denied, two times, to both the consultative physician and the consultative psychiatrist, that he no longer drinks alcohol.[4] However, at each of his hearings, the claimant admitted to continued alcohol intake. Similarly, at each of his hearings, the claimant twice denied any smoking of tobacco cigarettes since 2012, not even a single puff, yet to the consultative physician on February 21, 2014, he admitted to smoking one to two packs of cigarettes per day for the past 40 years. These multiple discrepancies suggest strongly that the claimant may be less than forthcoming, further diminishing his credibility.

(TR. 44-45) (internal citations omitted).[5]

According to Mr. Walls, the ALJ incorrectly cited inconsistencies between his testimony and statements to Dr. Burke and Dr. Hand to improperly conclude that Plaintiff was less than credible. For example, Plaintiff contends that his testimony regarding drinking alcohol was *consistent* with what he had reported to Dr. Burke, because Plaintiff had told the physician that he did not drink because he could not afford to. (ECF No. 19:

---

[4]  Presumably, the ALJ meant to state that Mr. Walls twice denied drinking alcohol to the consultative providers, not that he denied *not* drinking alcohol, which would be an admission of drinking.

[5]  In his review of the evidence from Dr. Hand, the ALJ also stated that a discrepancy existed between Plaintiff's denial of alcohol use to Dr. Hand and his testimony at the two hearings, which bore on the issue of credibility. *See* TR. 40.

12). But Plaintiff's rationale for not drinking (not being able to afford it) is irrelevant and does not change the fact that had Plaintiff reported to Dr. Burke (and Dr. Hand) that he did not drink alcohol, and thereafter reported at two hearings that he often did so. Thus, the ALJ did not err in citing inconsistencies regarding Plaintiff's alcohol consumption to diminish his credibility under SSR 16-3p.[6]

Next, Plaintiff states that the ALJ erroneously relied on inconsistencies between his testimony and a statement made to Dr. Burke regarding his smoking cigarettes. On February 21, 2014, Dr. Burke noted that Plaintiff had reported smoking 1-2 packs of cigarettes per day, which he had been doing for 40 years. (TR. 393). But on December 1, 2015, Plaintiff testified that he had quit smoking in June or July of 2014. (TR. 99). The undersigned therefore agrees with Mr. Walls that the ALJ incorrectly cited an inconsistency regarding Plaintiff's use of cigarettes. But in addition to accurately relying on an inconsistency regarding Plaintiff's alcohol use, the ALJ also discounted Plaintiff's subjective statements citing:

- Mr. Walls' lack of effort to obtain treatment for his alleged impairments;

- A "lack of observed limitations in level of functioning at [Plaintiff's] consultative examinations;"

- A lack of corroboration between Plaintiff's testimony and clinical findings; and

- The fact that Mr. Walls had failed to seek any medical treatment despite available options involving emergency room care and charitable organizations.

---

[6] Although the ALJ stated that Plaintiff's "credibility" was diminished and SSR 16-3p eliminated the use of the term "credibility" the ALJ was still charged with considering the consistency of Plaintiff's statements with the evidence of record in evaluating Plaintiff's subjective statements. *See* SSR 16-3p, at *4-10.

(TR. 44-45). Accordingly, the Court concludes that the ALJ's evaluation of Plaintiff's subjective allegations was not undermined by the misstatement concerning cigarette use and was otherwise supported by substantial evidence.

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on March 26, 2019.

_____

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE